IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: <br><br> BLACK SAMSUNG CELLULAR PHONE <br> IMEI: 357013292889963 <br><br> CURRENTLY LOCATED AT FBI PITTSBURGH HEADQUARTERS, 3311 EAST CARSON STREET PITTSBURGH, PENNSYLVANIA 15203 | Magistrate No. 21-142 <br><br> [UNDER SEAL] |

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

I, Ahmad Hassanpoor, being duly sworn, hereby depose and state the following:

**Introduction and Affiant Background**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search of a BLACK SAMSUNG CELLULAR PHONE, IMEI: 357013292889963 (hereinafter "TARGET DEVICE"), that was seized by the FBI Pittsburgh subsequent to arrest and search of Khaled MIAH ("MIAH"), on his person, on January 6, 2020 and is currently stored at the FBI Pittsburgh Headquarters, 3311 East Carson Street, Pittsburgh, Pennsylvania 15203. The information to be searched in TARGET DEVICE is described in detail in the following paragraphs and in Attachment B.

2. I have served as a Federal Bureau of Investigation ("FBI") Special Agent since March 2020. As a Special Agent with the FBI, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

3. I am currently assigned to the Joint Terrorism Task Force ("JTTF") in the FBI's

1

Pittsburgh Division. In this capacity, I am charged with investigating possible violations of federal criminal law. By virtue of my FBI employment, I perform and have performed a variety of investigative tasks, including functioning as a case agent on international terrorism investigations. I have received training and have gained experience in the conduct of counterterrorism investigations, the execution of federal search warrants and seizures, and the identification and collection of computer-related evidence.

4. The facts set forth in this affidavit are based on my personal knowledge, the knowledge obtained during my participation in this investigation, the knowledge obtained from other individuals, including other law enforcement personnel, review of documents and computer records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, this affidavit does not set forth each and every fact that I have learned in the course of this investigation.

5. Based on the facts set forth in this affidavit, I submit there is probable cause to believe that the TARGET DEVICE, set forth in Attachment A, contains documents, evidence and stored communications and other electronic content that serve as evidence, contraband, fruits, and/or instrumentalities of activities in violation of Title 18, United States Code, Section 875(c), Interstate Threatening Communications, Title 18, United States Code, Section 115(a)(1), Influencing, Impeding or Retaliate against a Federal Law Enforcement Officer and Title 18, United States Code, Section 1519, Destruction of Records in a Federal.

**Facts Establishing Probable Cause**

6. On January 6, 2021, the FBI Pittsburgh JTTF arrested KHALED MIAH pursuant to a federal criminal complaint (Magistrate No, 21-10 WDPA)(the "Criminal Complaint") charging MIAH with Interstate Threatening Communications in violation of Title 18, United States Code, Section 875(c), Influencing, Impeding or Retaliating agianst a Federal Law Enforcement Officer, in violation of Title 18, United States Code, Section 115(a)(1) and Destruction of Records in a Federal Investgation in violation of Title 18, United States Code, Section 1519. A search warrant for MIAH's residence, 4 Virgila Place, Pittsburgh, Pennsylvania, 15213 also was signed by Magistrate Judge Cynthia Reed Eddy on January 6, 2021. On January 8, 2021, MIAH was ordered to remain detained pending trial.

7. During the search of the residence and subsequent arrest of MIAH, on January 6, 2021, in front of his residence at 4 Virgila Place Pittsburgh Pennsylvania 15213, FBI Agents seized the TARGET DEVICE on MIAH's person on the porch of his residence.[1] The TARGET DEVICE is currently at the FBI Pittsburgh headquarters pending approval of this proposed search warrant authorizing search of its contents. The TARGET DEVICE has remained in secure law enforcement custody at FBI at all relevant times.

8. Based on my training and experience, I know that the TARGET DEVICE has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the TARGET DEVICE first came into the possession of the FBI.

---

[1] The January 6, 2021 search warrant of MIAH's residence authorized that, among other things, cellular and smart phones and electronic devices be seized. This warrant is being obtained in an abundance of caution.

9. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

10. The criminal complaint filed on January 6, 2021 against MIAH charged that MIAH, who resided in the Western District of Pennsylvania, accessed a social media communications service with computers, iPad and/or a cellular telephone with the intent to transmit Interstate Threatening Communications in violation of Title 18, United States Code, Section 875(c), Title 18, United States Code, Section 1519, Destruction of Records in a Federal Investigation and to Influence, Impede or Retaliate against a Federal Law Enforcement Officer in violation of Title 18, United States Code, Section 115(a)(1).

11. The FBI investigation has revealed that MIAH used multiple electronic devices previously seized in a search warrant of his residence on October 9, 2020 and then continued to use electronic devices to post threatening and retaliatory interstate communications on social media after the October 9, 2020 search and seizure of his devices. Thus, there is probable cause to believe that the TARGET DEVICE was used by MIAH access his social media accounts described in the paragraphs below.

12. On January 4, 2021, FBI Pittsburgh agents interviewed MIAH's former property manager, who confirmed that MIAH used the phone number 412-961-3938 to contact him on or around December 31, 2020. According to business records provided by Twitter Inc. on January 4, 2021, the FBI learned that this phone number also was used to create the Twitter account @ServiceFederal, a Twitter account belonging to MIAH, on or about December 19, 2020. This Twitter account was directly associated with the threatening interstate Twitter posts set forth in the Criminal Complaint. It is reasonable to assume that the TARGET DEVICE is the cellular phone that was used to access the @ServiceFederal Twitter account, as all other cellular phones belonging

to MIAH had been previously seized by the FBI.

13. Furthermore, business records provided to the FBI by Twitter Inc. also revealed that same Internet Protocol (IP) address "98.111.206.128" used to create @ServiceFederal Twitter account was also used to access several of MIAH's known social media and mobile messaging accounts since he moved to his current residence in mid-2020. This IP address is linked to MIAH's residence address that was the subject of the October 9, 2020 and the January 6, 2020 search warrants.

14. FBI Pittsburgh has identified six (6) separate Twitter accounts believed to be attributable to MIAH: @AbuUmarSinai, @Lugenpresse_, @QassamSol, @54marienstrasse, @Bruhkhaled and @ServiceFederal. After FBI Pittsburgh executed a previous federal search warrant for the search of MIAH's residence, signed by Magistrate Judge Lisa Pupo Lenihan in Western District of Pennsylvania on October 9, 2020, subsequently, through open source research, FBI Pittsburgh revealed that MIAH deleted and/or deactivated three of the stated twitter accounts, @AbuUmarSinai, @Lugenpresse, and @QassamSol. According to business records provided by Twitter Inc., in November and December 2020, MIAH subsequently created three separate Twitter accounts: @54marienstrasse, @Bruhkhaled *and* @ServiceFederal. After FBI continued to investigate the newly created Twitter accounts, on January 1, 2021, at or around 10:45 p.m., Twitter account @ServiceFederal was altered to "@IslamIsEvil2021" with a display name of "TRUMP2020" and its viewership was altered from publicly visible to a protected status and only visible to its followers. On or around the same time and date, both Twitter accounts @54marienstrasse and @Bruhkhaled were deactivated. As of this proposed search warrant, all stated Twitter accounts of MIAH are suspended by Twitter Inc.

**Retaliatory and Interstate Threatening Communications**

**@ServiceFederal**

15.     According to business records provided by Twitter, Inc. on January 4, 2021, the @ServiceFederal Twitter account was created on December 19, 2020 with the unique user identification ("UID") 1340146107414945792 and was registered to the phone number 412-961-3938. As described in detail below and in the Criminal Complaint, prior to its suspension, MIAH used this Twitter account to threaten, intimidate and harass FBI Pittsburgh Agents and the FBI.

16.     Specifically, on or about December 27, 2020 at approximately 1:28 p.m., MIAH posted the following statements through the @ServiceFederal Twitter account:



Based upon the investigation of MIAH to date, the FBI assesses that by referring to watching "videos of the second plane hit the south tower," MIAH is referring to the coordinated Al-Qaeda terrorist attacks of September 11, 2001, at which time two commercial airplanes were hijacked and crashed into the North and South towers of the World Trade Center in New York City. As a result, the North and South towers ultimately burned and collapsed causing the deaths of more

than 2900 people.[2]

17.     Based upon the investigation to date, the FBI also assesses that by referring to "Nick, Dave, Mike and the whole bureau," MIAH was making specific and direct reference to those Pittsburgh FBI agents and JTTF task force members who had been conducting the investigation of his activities, as well as the entire Federal Bureau of Investigation. MIAH communicated that "the deed will be done" via Twitter, an interactive social media platform based in San Francisco, California.

18.     After posting the statements on December 27, 2020, with full knowledge of the FBI investigation into his conduct, MIAH subsequently deleted those posts by December 28, 2020, which had the effect of impeding, obstructing, and influencing the investigation or proper administration of any matter within the jurisdiction of the Federal Bureau of Investigation, which is a department or agency of the United States.

19.     On December 28, 2020, December 29, 2020 and December 30, 2020, MIAH posted the following additional statements on the @ServiceFederal Twitter account.

---

[2] The coordinated attacks were perpetrated by 19 Al-Qaeda members who hijacked four domestic passenger airplanes and crashed them into pre-determined targets, resulting in the deaths of 2,997 people in New York City, Washington, D.C., and Shanksville, Pennsylvania.







20.     The coordinates posted by MIAH on Twitter on December 29, 2020, an interactive social media platform based in San Francisco, California, resolve to the FBI Headquarters Building located at 935 Pennsylvania Avenue NW, Washington, DC 20535.

21.     Based upon the investigation to date, the FBI assesses that by communicating that "the zero hour is approaching" via Twitter, MIAH intentionally conveyed a threat to injure others in interstate commerce. Further, by posting the specific coordinates to the FBI Headquarters in Washington, D.C., it is reasonable to infer that MIAH intentionally conveyed a specific threat target to the investigating FBI agents. Finally, by posting "Rasheed, Dave, Nick, Mike…how's your investigation going? Things are looking "bright" in 2021" MIAH is again making specific, personal reference to the investigating federal law enforcement officers.

22.     On December 30, 2020, at approximately 5:43 a.m., MIAH posted from his @ServiceFederal Twitter account: *"2001-2021 is 20 years. An entire generation, yet men like me*

9

*still exist and pop up into existence. Next time you come in cowboy with the crew, the hardwood will collapse beneath your feet."* It reasonable to infer that MIAH is again referring to the terrorist attack of September 11, 2001 and drawing an analogy between those actors and "men like [MIAH] me." Based upon the investigation to date, the FBI assesses that by stating "[n]ext time you come in cowboy with the crew, the hardwood will collapse beneath your feet," MIAH is referencing the search warrant executed at his residence by FBI on October 9, 2020, and threatening that the hardwood floor will collapse (by intention or sabotage) should FBI attempt to execute another search warrant or action at his residence.



23.     On December 31, 2020, MIAH posted the following on his @ServiceFederal Twitter account:



Based upon the investigation to date, the FBI assesses that by referring to "yellow tapes will flow", MIAH is making specific reference to a crime scene by referring to yellow crime scene tape.

### **@Bruhkhaled** and **@54marienstrasse**

24. According to business records provided by Twitter, FBI Pittsburgh is aware that Twitter account @Bruhkhaled was created on or about November 16, 2020 with unique user Identifier UID (1328322952664899585) and a display name "ItsKhaledBruh." Further, based on official records provided by Twitter Inc., FBI Pittsburgh is aware that Twitter account @54marienstrasse was created on October 22, 2020 under display name ""FishingExpedition."

25. Based on the stated official records provided, both of the above Twitter accounts are attributable to the phone number +14124828048 which is believed to have been activated subsequent to the execution of aforementioned federal search warrant of MIAH's residence on October 9, 2020. According to business records provided to the FBI by Facebook Inc. in response to a previously served search warrant, MIAH confirmed ownership of this phone number and provided it to another associate to contact him. Additionally, both accounts were created using the

same IP address that was used to create the Twitter account @ServiceFederal. Further, the @54marienstrasse account referenced MIAH's university ("pitt.edu") in its caption and refers specifically to the cyberstalking statute referenced in the FBI warrant of MIAH's residence on October 9, 2020. The @BruhKhaled account had a photograph that your Affiant recognizes as MIAH and also references his university "@Pitt 20". On or about January 1, 2021, both Twitter accounts were deleted and/or deactivated.

26. MIAH has used these two Twitter accounts as well to target FBI Pittsburgh Special Agents with language intended to intimidate, harass, and provoke. He has frequently mentioned Supervisory Special Agent A and Special Agent A by name and has tweeted statements indicating that he has researched both of their personal lives, including specific references to Supervisory Special Agent A's prior profession and current city and Special Agent A's wife, siblings, hometown, and education, including the following examples:

- November 10: "*Unfortunately, you can't unlearn and unknow people. I know who you are…..forever.*"

- November 12: "*I don't believe in violence. But I do believe in offending people. The law is the law [Special Agent A]. Too bad. We both know each other's secrets.*"

- November 14: "*Let me be clear again, FBI Special Agent [Supervisory Special Agent A] of [current city], a former [prior occupation] turned Muslim hunter, is a coward.*"

- November 14: "*Hey [Special Agent A], wanna have an orgy? You, me and ……her?*"

- November 17: "*[Special Agent A's sister's name] !!!*"

- November 18: "*I never forget a face, nor a name, nor the clan, this jurisdiction or another, it's never over.*"

- November 18: "*Cyber footprint is as thick as blood. The entire clan is a [sic] intel jackpot.*"

- November 18: "*I prefer a [Special Agent A's sister's occupation] over a [Wife A's occupation] #thewholeclan.*"

- November 23: "*New Idea for a TV comedy show: Let's call it [Special Agent A] and [Special Agent A's brother's name].*"

- November 25: "*Yeah this kid named [Special Agent A] who is a closet racist who works for the FBI in Pittsburgh basically created a terrorist by giving him all the materials to carry out murder then right before it happens he's like 'gotcha' affidavit time. [Special Agent A]'s whole family are a bunch of leeches.*"

- November 25: "*'If your [sic] looking for a radical, well there's this guy named…….(pay me $1 million in gold bullions) first, and let me fuck your boys girl'. Obviously I'm not gonna pull out.*"

- November 25: "*[Initials of Special Agent A, his brother, his wife, and his sister] –Suck my balls.*"

- November 26: "*[Special Agent A's sister's name].*"

- November 26: "*That [reference to Wife A's hair color] is so fucking retarded looking. I hate her face.*"

- November 26: "*[Special Agent A's sister] is actually good looking. Your wife is trash. [References to Wife A's employment and education].*"[3]

- November 27: "*This idiot once asked me about my family members. He asked 'we know a couple' and 'we'd like to know more'. Now the shoe is on my foot mutherfucker [sic]. I'm not the only one that knows.*"

- November 27: "*The people that I know, the ones that are serious and dedicated, have zero cyber footprints. They are ghosts, and will be ghosts til the end. – Poetry*"

- November 27: "*I will definitely let Ankara know about [Special Agent A's hometown].*"

- November 28: "*An agent. A [Special Agent A's sister's occupation]. A [Special Agent A's father's occupation]. A [derogatory reference to Special Agent A's brother's occupation]. All in one clan.*"

- December 2: "*[Selfie of MIAH with Turkish flags superimposed on his cheeks and a thought bubble with the words "Special Agent A] your [sic] a bitch !!!*"[4]

27.     Based on training and experience, your Affiant is aware that Twitter is a popular

---

[3] MIAH subsequently deleted this Tweet.
[4] MIAH subsequently deleted this Tweet.

13

multi-media platform by which individuals establish virtual networks and communicate with people all over the world. Individuals who use the Internet to threaten others and espouse extremist beliefs often utilize a variety of social media and mobile messaging accounts to conduct their activities.

28.  Further, your affiant is aware that individuals that actively use social media platforms can easily access these social media accounts by using a telephone also known as "smart phone" such as the TARGET DEVICE to transmit messages, comments, and statements online. These individuals also may adjust security settings on their accounts, change account features, delete content, delete accounts, or create new accounts on the same platform using their telephone device in an effort to maintain their activities and communications while avoiding scrutiny from Internet providers and law enforcement entities.

29.  Based on training and experience, your Affiant is aware of previous instances in which individuals, some of whom claimed allegiance to ISIS or other domestic or international extremist groups, exposed the names and personal information of members of law enforcement or the military (sometimes referred to as "doxxing") with an intent to incite violence against them and/or deter official investigations, harass, intimidate or retaliate by using their telephone device.

30.  The aforementioned facts establish probable cause to believe that the TARGET DEVICE, as described in detail in Attachment A, contains documents, evidence and stored communications and other electronic content that serve as evidence, contraband, fruits, and/or instrumentalities of activities in violation of Title 18, United States Code, Section 875(c), Interstate Threatening Communications, Title 18, United States Code, Section 115(a)(1), Influencing, Impeding or Retaliate against a Federal Law Enforcement Officer and Title 18, United States Code, Section 1519, Destruction of Records in a Federal Investigation.

### BACKGROUND REGARDING CAPABILITIES AND SEARCHES OF CELLULAR TELEPHONES

31. A wireless telephone (or mobile telephone, cellular telephone, or smart phone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A cellular phone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, cellular phones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Cellular phone may also include global positioning system ("GPS") technology for determining the location of the device.

32. As stated above, cellular telephones or smart phones are capable of storing sent and received text messages, images, and videos on their digital memory. Based on my knowledge, training, and experience, I know that these electronic devices can store such information for long periods of time. Similarly, if a cellular or smart phone is used to access the Internet, the Internet pages that were viewed on the cellular phone are typically stored for some period of time on the device. This information can sometimes be recovered through forensic analysis.

33. A thorough search of electronic devices such as cellular phones for evidence of instrumentalities of a crime commonly requires a qualified expert to conduct the search in a laboratory or other controlled environment. This is true for the following reasons:

    a. Searching electronic devices is a highly technical process which requires

specific expertise and specialized equipment. There are so many types of electronic devices in use today that it is impossible to bring to the search site all of the necessary technical manuals and specialized equipment necessary to conduct a thorough search. In addition, it may also be necessary to consult with personnel who have specific expertise in the type of digital media that is being searched.

      b.      Searching digital media requires the use of precise, scientific procedures which are designed to maintain the integrity of the evidence and to recover "hidden," erased, compressed, encrypted, or password protected data. Since such data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential in conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted.

## **ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

34.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

35.     As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the TARGET DEVICE was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the TARGET DEVICE because:

      a.      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as

16

a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.

      b.      Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

      c.      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

36. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the one cellular phone consistent with the warrant. The examination may require law enforcement forensic examiners to employ techniques, including, but not limited to, computer-assisted scans of the entire medium, that might expose many parts of the TARGET DEVICE to human inspection in order to determine whether they contain evidence described by the warrant.

37. *Manner of execution.* Because this warrant seeks only permission to examine one cellular phone already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

**Sealing Order Requested**

38.     It is respectfully submitted that this Court issue an order sealing, until further order of this Court, all papers submitted in support of this application, including the application, the affidavit, the search warrant, and the requisite inventory notice.  Sealing is necessary because the items and information to be seized are relevant to an ongoing investigation.  Premature disclosure of the contents of this affidavit and related documents may have a negative impact on this continuing investigation, place individuals in danger, and may jeopardize its effectiveness.

**Conclusion**

39.     Based on the aforementioned information, there is probable cause to believe that evidence, contraband, fruits, and/or instrumentalities of violations of the Title 18, United States Code, Section 875(c), Interstate Threatening Communications, Title 18, United States Code, Section 115(a)(1), Influencing, Impeding or Retaliate against a Federal Law Enforcement Officer and Title 18, United States Code, Section 1519, Destruction of Records in a Federal Investigation will be found in the TARGET DEVICE seized subsequent to search and MIAH's arrest on January 6, 2021. Therefore, I respectfully request that the Court issue the proposed search warrant.

The above information is true and correct to the best of my knowledge, information, and belief.

*/s/ Ahmad Hassanpoor*
Ahmad Hassanpoor
Special Agent
Federal Bureau of Investigation

The Affiant attested to this Affidavit
By telephone pursuant to FRCP 4.1(b)(2)(A)
25th day of January, 2021.

_____
LISA PUPO LENIHAN
United States Magistrate Judge