# UNITED STATES DISTRICT COURT
for the
Western District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>THE RESIDENCE LOCATED AT 250 CALVERT STREET<br>BRIDGEVILLE, PENNSYLVANIA 15017 | Case No. Magistrate No. 21- 141<br><br>[UNDER SEAL] |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the    Western    District of    Pennsylvania
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before    February 7, 2021    *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to    the Duty Magistrate Judge    .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    01/24/2021 10:15 am        *Judge's signature*

City and state:    Pittsburgh, Pennsylvania        MAUREEN P. KELLY, United States Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.:<br>  Magistrate No. 21- | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

    I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

                                          _____
                                                       *Executing officer's signature*

                                          _____
                                                         *Printed name and title*

# ATTACHMENT A

*Property to be searched*

The property to be searched is the premises, curtilage, and outbuildings at **250 Calvert Street, Bridgeville, Pennsylvania 15017** (hereinafter, the "**TARGET PREMISES**"), further described as a three-bedroom, two-story residence composed of red brick. The **TARGET PREMISES** includes a covered side patio located above a connected garage and a walkway leading to the front stairs that is connected to the driveway. The backyard is enclosed by a fence.




# ATTACHMENT B

*Property to be seized*

1. The items to be seized are fruits, evidence, information, contraband, or instrumentalities, in whatever form and however stored, relating to violations of 18 U.S.C. § 1512(c)(2) (obstruction of Congress); 18 U.S.C. § 111 (assaulting a federal agent); 18 U.S.C. § 231 (civil disorders), 18 U.S.C. § 371 (conspiracy); 18 U.S.C. § 372 (conspiracy to impede/assault federal agents); 18 U.S.C. § 930 (possession of firearms and dangerous weapons in federal facilities); 18 U.S.C. § 1114 (murder of a federal agent); 18 U.S.C. § 641 (theft of government property); 18 U.S.C. § 1361 (destruction of government property); 18 U.S.C. § 2101 (interstate travel to participate in riot); 18 U.S.C. § 1752(a)(1) and (2) (unlawful entry on restricted buildings or grounds); Title 40 U.S.C. § 5104(e)(2) (violent entry, disorderly conduct, and other offenses on Capitol grounds), and 18 U.S.C. § 922(g)(2) (fugitive felon in possession of firearm) (collectively, the "TARGET OFFENSES"), as described in the search warrant affidavit, including, but not limited to:

   a. Evidence concerning planning to unlawfully enter the U.S. Capitol, including any maps or diagrams of the building or its internal offices;

   b. Evidence concerning unlawful entry into the U.S. Capitol, including any property of the U.S. Capitol;

   c. Evidence concerning awareness of the official proceeding that was to take place at Congress on January 6, 2021, i.e., the certification process of the 2020 Presidential Election;

d. Evidence concerning efforts to disrupt the official proceeding that was to take place at Congress on January 6, 2021, i.e., the certification process of the 2020 Presidential Election;

e. Evidence relating to a conspiracy to illegally enter and/or occupy the U.S. Capitol Building on or about January 6, 2021;

f. Evidence concerning the breach and unlawful entry of the United States Capitol, and any conspiracy or plan to do so, on January 6, 2021;

g. Evidence concerning the riot and/or civil disorder at the United States Capitol on January 6, 2021;

h. Evidence concerning the assaults of federal officers/agents and efforts to impede such federal officers/agents in the performance of their duties the United States Capitol on January 6, 2021;

i. Evidence concerning damage to, or theft of, property at the United States Capitol on January 6, 2021;

j. Evidence of any conspiracy, planning, or preparation to commit those offenses;

k. Evidence concerning efforts after the fact to conceal evidence of those offenses, or to flee prosecution for the same;

l. Evidence concerning materials, devices, or tools that were used to unlawfully enter the U.S. Capitol by deceit or by force, including weapons and elements used to breach the building or to counter efforts by law-enforcement, such as pepper spray or smoke grenades;

m. Evidence of communication devices, including closed circuit radios or walkie-talkies, that could have been used by co-conspirators to communicate during the unlawful entry into the U.S. Capitol;

n. Evidence of the state of mind of GRAYSON and/or other co-conspirators, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, or knowledge and experience, related to the criminal activity under investigation; and

2. Evidence concerning the identity of persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with the unlawful actors about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts.

3. Records and information that constitute evidence of identity, including but not limited to:

   a. clothing worn by GRAYSON, to include a black hooded sweatshirt bearing a yellow "Q" emblem on the right chest and a coiled snake emblem ("Don't Tread On Me") on the left chest; a pair of black boots; a Pittsburgh Pirates baseball cap; and brown work gloves;

   b. clothing and other articles that reflect evidence of having participated in the unlawful activity at the U.S. Capitol, including evidence of pepper spray or other non-lethal crowd control remnants;

   c. Other paraphernalia used by or associated with GRAYSON, to include a yellow Gadsden flag ("Don't Tread On Me") matching or similar to that seen in a

photograph of GRAYSON prior to entering the U.S. Capitol on or about January 6, 2021;

4. Records and information that constitute evidence of GRAYSON's possible affiliation with groups, to include the Proud Boys or Alex Jones;

5. Records and information—including but not limited to documents, communications, emails, online postings, photographs, videos, calendars, itineraries, receipts, and financial statements—relating to:

    a. Any records and/or evidence revealing GRAYSON's presence at the January 6, 2021, riot, or previous events related to the Presidential Election in November 2020;

    b. Any physical records, such as receipts for travel, rental agreements for vehicles or lodging, which may serve to prove evidence of travel of to or from Washington D.C. from November of 2020 through January of 2021;

    c. GRAYSON's (and others's) motive and intent for traveling to the U.S. Capitol on or about January 6, 2021, or from November 2020 through January 6, 2021; and

    d. GRAYSON's (and others's) activities in and around Washington, D.C., specifically the U.S. Capitol, on or about January 6, 2021.

6. Any weapons potentially used in the commission of violent activity relating to the U.S. Capitol riot on January 6, 2021, or evidencing the possible unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(2), including but not limited to, firearms, knives, clubs, and flagpoles;

7. Records and information related to criminal charges pending against GRAYSON

in the State of West Virginia, including court papers, hearings, citations; records and information related to the sale, possession, acquisition of firearms and the acquisition, renewal, possession of a License to Carry Firearms issued from the State of Pennsylvania; and, any other evidence related to a violation of 18 U.S.C. § 922(g)(2).

8. Digital devices used in the commission of, or to facilitate, the above described offenses, including to communication with associates also involved in the criminal activity, to access the internet and various social media sites, to take photographs, to record videos, and/or live-stream footage during the events described.

9. For any digital device that is capable of containing and reasonably could contain fruits, evidence, information, contraband, or instrumentalities as described in the search warrant affidavit and above, hereinafter the "Device(s)":

   a. evidence of who used, owned, or controlled the Device(s) at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, chat, instant messaging logs, photographs, videos, and correspondence;

   b. evidence of software, or the lack thereof, that would allow others to control the Device(s), such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

   c. evidence of the attachment to the Device(s) of other storage devices or similar containers for electronic evidence;

d. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Device(s);

e. evidence of the times the Device(s) was used;

f. evidence of the locations the Device(s) were used;

g. passwords, encryption keys, and other access devices that may be necessary to access the Device(s);

h. documentation and manuals that may be necessary to access the Device(s) or to conduct a forensic examination of the Device(s);

i. records of or information about Internet Protocol addresses used by the Device(s); and

j. records of or information about the Device(s)'s Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

During the execution of the search of the **TARGET PREMISES** described in Attachment A, law enforcement personnel are also specifically authorized to obtain from GRAYSON (but not any other individuals present at the **TARGET PREMISES** at the time of execution of the warrant) the compelled display of any physical biometric characteristics (such as fingerprint/thumbprint, facial characteristics, or iris display) necessary to unlock any Device(s) requiring such biometric access subject to seizure pursuant to this warrant for which law enforcement has reasonable suspicion that the aforementioned person(s)' physical biometric characteristics will unlock the

7

Device(s), to include pressing fingers or thumbs against and/or putting a face before the sensor, or any other security feature requiring biometric recognition of:

   (a)  any of the Device(s) found at the **TARGET PREMISES**,

   (b)  where the Device(s) are limited to those which are capable of containing and reasonably could contain fruits, evidence, information, contraband, or instrumentalities of the offense(s) as described in the search warrant affidavit and warrant attachments,

for the purpose of attempting to unlock the Device(s)'s security features in order to search the contents as authorized by this warrant.

While attempting to unlock the device by use of the compelled display of biometric characteristics pursuant to this warrant, law enforcement is not authorized to demand that the aforementioned person(s) state or otherwise provide the password or identify the specific biometric characteristics (including the unique finger(s) or other physical features), that may be used to unlock or access the Device(s). Nor does the warrant authorize law enforcement to use the fact that the warrant allows law enforcement to obtain the display of any biometric characteristics to compel the aforementioned person(s) to state or otherwise provide that information. However, the voluntary disclosure of such information by the aforementioned person(s) is permitted. To avoid confusion on that point, if agents in executing the warrant ask any of the aforementioned person(s) for the password to any Device(s), or to identify which biometric characteristic (including the unique finger(s) or other physical features) unlocks any Device(s), the agents will not state or otherwise imply that the warrant requires the person to provide such information, and will make

clear that providing any such information is voluntary and that the person is free to refuse the request

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "digital devices" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop computers, laptop computers, notebooks, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and connections; storage media, such as hard disk drives, floppy disks, USB flash drives, memory cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); security devices; and any other type of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage function.